**Louella WILSON, Plaintiff in Error,**

**v.**

**STATE of Oklahoma, Defendant in Error.**

**No. A–12459.**

Criminal Court of Appeals of Oklahoma.

June 26, 1957.

Alvin C. Bruce, Ardmore, for defendant in error.

Mac. Q. Williamson, Atty. Gen., Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

NIX, Judge.

Plaintiff in error, hereafter referred to as defendant, was charged by information in the county court of Carter County, Oklahoma with the crime of unlawful possession of intoxicating liquor. Defendant was tried before a jury, found guilty, and her punishment assessed at imprisonment in the county jail for a period of 30 days and to pay a fine of $250 and costs of the action. A brief statement of the facts as correctly stated by defendant and a portion thereof is herein stated as follows:

"* * * the evidence shows that the defendant, who is an elderly colored lady, was living in the City of Ardmore, Oklahoma, with her husband, Roscoe Wilson. That prior to this time she had never been arrested before in her life; that she was engaged in the cafe business and was running a place known as Lou's Supper Club, located at 1036 White Street, Southeast in the City of Ardmore, Oklahoma, in a colored settlement known as Nob Hill. That her husband had a dance hall some 150 yards east of her cafe. That on this particular date (March 3, 1956) in which she is charged with violating the law, her husband, Roscoe Wilson, went to the cafe and opened the same at 2:00 o'clock on this particular afternoon, in order to barbecue some 22 chickens for a chicken dinner which some of the Air Base boys were giving in honor of some of their fellow Airmen, who were being sent overseas. That her husband did barbecue these chickens and at about 8:30 in the evening, plaintiff in error went to her cafe and started making preparations for the dinner for the airmen. That sometime during the afternoon, while her husband was barbecuing said chickens, some of the airmen said to him that they wanted to leave some packages in the cafe and her husband told them to go ahead, that it would be all right. This occurred before the plaintiff in error came on duty at the cafe. That she and some hired help were in the cafe getting the dinner ready when a constable, the only prosecuting witness in this case, made his appearance * *"

The constable testified he entered the place to check for law violators. Upon being asked what he saw upon entering he testified:

"A. Just a whole bunch of people setting in there, two colored boys were sitting there drinking whiskey when I came in and I walked on back in the place to search it, and I got back in the kitchen, and there was a case of wine setting there, and I got the wine, and I opened the icebox and there was the champagne."

The constable took the unopened carton of wine and 5 quarts of champagne, made no arrest and left the premises. Defendant testified she had no knowledge of the wine or champagne being there until the constable took it into custody. That she had never sold any whisky, nor violated the law in any manner. The sheriff of the county testified he had never heard of any complaints about whisky being sold in this cafe or of any violations.

The defendant complains of six assignments of error on three of which merit discussion herein:

1. That court erred in overruling the motion to dismiss.

2. That court erred in overruling defendant's motion to suppress the evidence.

3. That court erred in refusing to sustain defendant's demurrer to the states evidence and motion of the defendant.

■ Defendant's support of the first assignment of error relies upon 22 O.S.1951 § 812:

"If a defendant, prosecuted for a public offense, whose trial has not been postponed, upon his application, is not brought to trial at the next term of court in which the indictment or information is triable after it is filed, the court must order the prosecution to be dismissed unless good cause to the contrary be shown."

In view of the testimony, we cannot agree with defendant's contention in this respect. The record shows that defendant was charged by information on the 23rd day of March, 1956, and said case was not set for trial until February, 1957. The pertinent part of the motion to dismiss filed by defendant and overruled by the court was as follows:

"Comes now the above named defendant and moves the court to dismiss this case for the following reasons, to-wit: That his case has been pending against this defendant for several months prior hereto, that said cause was not brought to trial at the last term of said court and that the same was not postponed upon his application.

"Wherefore, this defendant asks this Court to dismiss said case and to exonerate his bondsmen."

We are in full agreement with the state's brief in answer to defendant's contention which is well recited and based upon previous decisions of this court. No evidence was presented in support of this motion.

After calling the court's attention to the provisions of 22 O.S.1951 § 812, counsel for defendant contends, in substance, that the burden was upon the state to show cause of the delay of the trial to the January 1957 term. He insists that because of the failure of the State to make such proof, his motion to dismiss should have been sustained.

In Berkihiser v. State, 92 Okl.Cr. 31, 219 P.2d 1020, 1023, the court held:

"There is no fixed rule for determining the question as to what is meant by the term 'unless good cause to the contrary be shown.' 22 O.S. 1941 § 812. It is a matter for judicial determination under the facts and circumstances in each particular case.

"Where defendant is on bail, the presumption is that a delay in the trial is caused by or with the consent of defendant and the record must affirmatively show that he demanded trial or resisted continuance of the case. However, if defendant is not on bail, the law makes the demand for trial for him and the prosecution has the burden of showing that the trial delayed for lawful cause."

It is indicated by the record that the defendant was on bail at the time the motion was filed on February 5th. In the motion to dismiss, she asks that her bondsmen be exonerated. She offered no proof to overcome the presumption that the delay in the trial was with her consent, nor make any affirmative showing that she demanded a trial or resisted any application for a continuance. We submit that due to the facts and circumstances of this particular case the trial court did not commit error in overruling the motion to dismiss the case.

The defendant next contends that the court erred in overruling the motion to suppress the evidence. This contention on part of the defendant is not without merit. The defendant presented one witness in support of his motion to suppress; the constable who made the search without a warrant and seized the evidence. His testimony in substance was that he went to defendant's supper club for the purpose of checking the place for drunks.

"Q. Tell the court what you saw when you went in. A. When I walked in the door, two colored boys were sitting at a table drinking.

"Q. Drinking? A. Whisky, and I just walked on by and went through to the kitchen and there set this wine in the floor.

"Q. On the floor of the kitchen? A. And I opened the ice box and that's where the champagne was."

In overruling this motion, the court no doubt had in mind the holding of this court that constitutional provision against unreasonable search and seizure does not preclude the making of a seizure, without a warrant where the necessity of search is eliminated by the liquor being fully disclosed to the eye. However, we do not feel that this set of facts brings this case within that category. This was a supper club open to the public for the purpose of serving food, and there is no question but what the constable had a right to be in that portion of the club open to the public, but we do not believe it was ever intended for the kitchen of restaurant, or supper club or an ice box therein, to be a public place. Kitchens of such establishments are under rigid scrutiny by the Health Department and are designed exclusively for the preparation of food to serve to the customers and are in virtually every instance, separate and apart from the dining room where the customers gather and in every instance known to your writer, concealed behind doors, swinging or otherwise, as to preclude traffic, except employees.

To permit the public to loiter or traffic therein at will, would certainly not be conducive to health or sanitation. The kitchen not being a public place, the constable became a trespasser when he invaded the kitchen and the ice box to search, unless he first had seen the defendant violating the prohibitory liquor laws of this state. Then, and in that event, he would have had the right without a warrant to arrest the defendant and search the immediate premises. The constable testified as he entered the premises he saw two boys setting at a table drinking whisky. He did not say whether it was in a bottle or glass; whether it was on the table or whether he could smell it or not. He merely said he saw them drinking whisky and went on through to the kitchen where he saw the unopened carton of wine on the floor. He further testified the defendant was up front behind the counter, evidently tending to business. There was no evidence that defendant saw the boys drinking or had any connection therewith. There was no evidence that defendant was violating any law whatsoever. This most assuredly could not constitute a violation of the prohibitory liquor laws on the part of the defendant to justify a search without a warrant.

The defendant testified she did not see the boys drinking in her dining room; that she did not sell whisky there and never had. It would require an unreasonable assumption to conclude that the defendant had sold the boys the whisky if they were drinking. An assumption or suspicion is not sufficient. This court said in Whitford v. State, 35 Okl.Cr. 22, 247 P. 424, 425, and many others, that:

"No search of the person or seizure of any article found thereon can be made on mere suspicion that the person is violating the prohibitory liquor laws, in having intoxicating liquor in his possession, or without a warrant unless and until the alleged offender is in custody under a warrant of arrest or shall be lawfully arrested without a warrant as authorized by law."

It is well to note that no arrests were made and some 20 days passed before the defendant was charged. The constable would have been within his rights to have arrested the boys he says he saw drinking, for drinking in a public place, and searched their person and immediate possessions, but this would not justify search of defendant's premises. To hold otherwise would encourage subterfuge making it possible for officers to plant one in a public place with a flask or bottle to purposely give them the right to search by placing in sight of the officers or agents, whisky, or other intoxi-

cants, to justify an otherwise illegal search. The necessity for these safeguards are well recited in Keith v. State, 30 Okl.Cr. 168, 175, 235 P. 631, 633:

> "It is also said that if searches such as this cannot be made the prohibition law cannot be enforced. This may be true in part, or it may be true in whole. The answer is that an article of the Constitution having its origin in the spirit if not in the letter of the Magna Charta prevents it; and that it is the duty of the court to sustain and enforce the Constitution in its entirety, and not to permit what may seem to be presently a desirable mode of procedure to annul such fundamental portions of our organic law as the freedom from unlawful searches."

■ There can be little doubt from the testimony that the constable went to the premises of the defendant with the intention of making a search. He said (CM 16) that he walked right on past the boys and walked back in the place *to search it*. The constable walked straight through to the carton on the floor which he admitted was unopened and the record is completely void of any testimony as to how he knew it was wine, or how he knew champagne was in the ice box.

It would have been simple and proper for him to have obtained a warrant which he failed to do. The tendency of those who are impowered with the responsibility of enforcing the law, to obtain convictions by unlawful seizure, should find no sanction in this or any other court charged with the duty of supporting the constitution of our state.

Since the evidence of the constable as to the boys drinking would not justify a search of defendant's premises, there was no proper foundation for the search and seizure. Where there is no foundation, there can be no superstructure. It follows then that this search and seizure was illegal and unreasonable within the meaning of the constitution and not in keeping with the provisions of our statute relating thereto.

The motion to suppress should have been sustained.

The defendant complains of error in that the court did not sustain her motion for a directed verdict at the conclusion of the state's testimony. The evidence seized by this unlawful search was not presented as evidence at the trial. However, it is not uncommon that such evidence as wine and champagne lose their way in efforts to get into court as evidence. No excuse was tendered, none asked for. But any evidence as to the articles seized should have been excluded upon proper or timely objection. None were made by defendant and no exceptions allowed. However, this assignment needs little discussion and would never have been an issue had the motion to suppress been sustained.

As a result of the error heretofore mentioned, the judgment and sentence of the County Court of Carter County is hereby reversed and the defendant discharged.

BRETT, P. J., and POWELL, J., concur.